UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALYDA PATRICIA GENOVA, MELANIE GAN,
and MARIA KRISZELDA ICUSPIT, individually
and on behalf of all others similarly situated,

                       Plaintiffs,           **CLASS ACTION COMPLAINT**

            -vs-                                Plaintiffs Demand a Jury Trial

CONCOURSE REHABILITATION & NURSING
CENTER, INC.,

                       Defendant.
----------------------------------------------------------------X

       Plaintiffs ALYDA PATRICIA GENOVA, MELANIE GAN, and MARIA KRISZELDA ICUSPIT, by their undersigned attorneys, as and for their complaint against defendant CONCOURSE REHABILITATION & NURSING CENTER, INC., allege on behalf of themselves and all others similarly situated, as follows:

       1.     This is an action for damages, injunctive relief, declaratory relief, and other remedies for violations of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et seq.*, 42 U.S.C. § 1981, the Anti-Peonage Law, 42 U.S.C. § 1994, the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and the New York State Human Rights Law, N.Y. Exec. L. §§ 290, *et seq.*

       2.     Defendant is a nursing home that recruits nurses from the Philippines to work for it in this District under contracts of indentured servitude. The defendant's standard employment contract contains illegal penalties designed to keep Filipino nurses working for them, including: (a) an indenture that the nurses must either pay or work off before they will be allowed to stop working; (b) a contract termination penalty disguised as a "liquidated damages" clause; and (c) a threat that the defendant will report the nurses to Immigration and Customs Enforcement (ICE)

1

and cause them to lose their lawful immigration status if they stop working before paying or working off the indenture.

3. Once the Filipino nurses are locked into the contracts of indentured servitude, they learn that the defendant is not paying them the same wages as their similarly situated, American co-workers. The defendant also discriminates against the Filipino nurses by attempting to coerce them to engage in Medicaid and other forms of healthcare fraud, and by assigning them excessive working hours with inadequate staffing. To keep the Filipino nurses from leaving, the defendant threatens them with serious harm, including enforcement of the illegal indenture and penalties in the employment contract and the threat to have them deported.

4. On behalf of themselves and all other Filipino nurses who have been employed by the defendant since July 28, 2014, plaintiffs seek a judgment for: compensatory and punitive damages for violations of the TVPA, Section 1981, and the New York City and State Human Rights Laws; pre- and post-judgment interest on all damages awarded; an injunction prohibiting the defendant, its agents and anyone acting in concert with it or on its behalf from threatening to enforce or enforcing the indenture or so-called "liquidated damages" clause; a declaration that the indenture and so-called "liquidated damages" clause are unenforceable under the TVPA, Section 1981, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a), 42 U.S.C. § 1988, N.Y. Exec. L. § 297, and N.Y.C. Admin. Code § 8-502(g); and granting such other relief as the Court deems just and proper.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1595(a) (civil trafficking). This Court has supplemental jurisdiction

over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District.

## The Parties

7.  Plaintiff ALYDA PATRICIA GENOVA is a Registered Nurse licensed to practice in the State of New York and an employee of the defendant. She is a citizen of the Republic of the Philippines and resides in Bronx County, New York.

8.  Plaintiff MELANIE GAN is a Registered Nurse licensed to practice in the State of New York and an employee of the defendant. She is a citizen of the Republic of the Philippines and resides in Westchester County, New York.

9.  Plaintiff MARIA KRISZELDA ICUSPIT is a Registered Nurse licensed to practice in the State of New York and an employee of the defendant. She is a citizen of the Republic of the Philippines and resides in Bronx County, New York.

10.  Defendant CONCOURSE REHABILITATION & NURSING CENTER, INC. ("Concourse") is a for-profit corporation organized under the laws of the State of New York with a principal place of business at 1072 Grand Concourse, Bronx, New York 10456.

## Facts Common to All Claims

11.  For more than 10 years, defendant Concourse has recruited Filipino nurses to work for it in New York. Throughout this time, Concourse has required the Filipino nurses to execute a standard employment contract and indenture or promissory note.

12.     In order to enter into a contract, Concourse required plaintiff Alyda Patricia Genova to sign its standard employment contract and an indenture in favor of Concourse for $20,000.00 plus 10% interest. Ms. Genova signed the contract and indenture in or about 2018.

13.     In order to enter into a contract, Concourse required plaintiff Melanie Gan to sign its standard employment contract and an indenture in favor of Concourse for $25,000.00 plus 10% interest. Ms. Gan signed the contract and indenture in or about 2018.

14.     In order to enter into a contract, Concourse required plaintiff Maria Kriszelda Icuspit to sign its standard employment contract and an indenture in favor of Concourse for $25,000.00 plus 10% interest. Ms. Icuspit signed the contract and indenture in or about 2018.

**A. Defendant's Pattern and Practice of Threatening Filipino Nurses With Serious Harm If They Try to Stop Working**

15.     Concourse has engaged in a deliberate scheme, pattern and plan intended to cause plaintiffs and other Filipino nurses to believe that they would suffer serious harm if they tried to leave its employ or find other employment.

16.     As a condition of employment, Concourse required plaintiffs and other Filipino nurses to sign a contract with a so-called "liquidated damages" clause that requires the nurses to pay between $20,000.00 and $25,000.00 if they do not compete the contract term.

17.     As a condition of employment, Concourse required plaintiffs and other Filipino nurses to sign an indenture or promissory note requiring the nurses to pay $20,000.00 or $25,000.00 "with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of ten percent (10%) per annum."

18.     The indenture provides that it may be enforced immediately without notice, presentment, or demand.

19.     The indenture states that the Filipino nurses waive protest.

4

20. The indenture is designed to deter plaintiffs and other Filipino nurses from leaving and to coerce them into continuing their employment with Concourse.

21. The amount of the indenture plus interest is disproportionate to the actual costs that might be incurred by Concourse in the event of an early termination of the contract.

22. The amount of the indenture plus interest is disproportionate to the anticipated damages Concourse might suffer in the event of an early termination of the contract.

23. Plaintiffs and other Filipino nurses paid for their own airfare from the Philippines. They also paid Concourse up front for processing, filing, and attorneys' fees related to their immigration petitions and applications.

24. The amount of the indenture plus interest is disproportionate to the compensation paid to plaintiffs and other Filipino nurses.

25. Plaintiffs reasonably feared that Concourse would enforce the indenture and cause them serious harm if they stopped working.

26. Concourse was and is able to calculate the amounts of actual damages it might suffer in the event of an early termination of the employment contracts.

27. In its standard employment contract, Concourse warns Filipino nurses that their legal status in the United States of America is dependent on its continued sponsorship of their immigration status with U.S. Citizenship and Immigration Services.

28. This warning is at best misleading and in many cases not true.

29. In its standard employment contract, Concourse threatens Filipino nurses that "[t]ermination of the Employee's employment for any reason automatically terminates and withdraws sponsorship by" Concourse.

30. In its standard employment contract, Concourse required plaintiffs and other Filipino nurses to agree that 25% of their future earnings would be garnished and paid to Concourse if they went to work for another employer before the end of the contract term.

31. The garnishment provision is effectively a non-compete penalty with no time, geographic, or substantive restriction.

32. The absence of a temporal, geographic, or substantive scope of the non-compete penalty creates an unreasonable restraint on the ability of plaintiffs and other Filipino nurses to practice their profession.

33. The absence of a temporal, geographic, or substantive scope of the non-compete penalty is broader than necessary to protect any legitimate business interest of the defendant.

34. The purpose of the non-compete penalty is not to protect any legitimate business interest of the defendant.

35. The purpose of the non-compete penalty is to obtain the labor and services of plaintiff and other Filipino nurses.

36. The purpose of the non-compete penalty is to deter plaintiff and other Filipino nurses from leaving and to coerce them into continuing their employment with the defendant.

37. Plaintiffs reasonably feared that Concourse would sue them to enforce the non-compete penalty if they tried to practice their profession with any other employer anywhere in the United States.

38. Plaintiffs reasonably feared that potential employers would not hire them as long as the defendant might sue to enforce the non-compete penalty.

39. Plaintiffs reasonably feared that the cost of defending themselves against the defendant's attempts to enforce the indenture, the so-called "liquidated damages" clause, and/or the non-compete penalty would cause them to suffer serious harm.

40. The indenture, the so-called "liquidated damages" clause, and the non-compete penalty are part of a contract of adhesion that the defendant obtained as a result of unequal sophistication and bargaining power.

**B. Defendant's Pattern and Practice of Abuse of and Discrimination Against Filipino Nurses**

41. After the plaintiffs were locked into contracts of indentured servitude, they discovered that the defendant was abusing its position of power by discriminating against them and other Filipino nurses in the terms and conditions of their employment.

42. The defendant pressured plaintiffs and other Filipino nurses to create false medical records that the defendant used to file false claims with Medicaid and other government and private insurance programs, including by falsely reporting on periodic assessments that a resident or patient was experiencing low blood pressure, vomiting or constipation requiring treatment, falsely reporting that residents or patients had received treatment that was not actually provided, and admitting a resident or patient without putting them in the system to hide the fact that Concourse was over its resident capacity.

43. Upon information and belief based on conversations with co-workers, while all the Filipino nurses were required to sign contracts of indentured servitude with a so-called "liquidated damages" clause, an indenture requiring payment of $20,000.00 or $25,000.00 plus 10% interest, and a non-compete penalty, American nurses performing the same or similar job responsibilities were not required to do so.

7

44. Upon information and belief based on conversations with co-workers, plaintiffs and other Filipino nurses were paid hourly rates that were less than the hourly rates paid to American nurses performing the same or similar job responsibilities.

45. Upon information and belief based on conversations with co-workers and observations in the workplace, plaintiffs and other Filipino nurses were consistently assigned extra hours or shifts on a more frequent basis than American nurses performing the same or similar job responsibilities.

## Class Action Claims

46. Defendant's conduct described above was part of and resulted from policies and practices that the defendant applied to all Filipino nurses it recruited and employed. Plaintiffs therefore bring the claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

47. The class is comprised of all Filipino nurses who worked for the defendant at any time since July 28, 2014.

48. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

49. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

   a. Numerosity: The potential members of the class are so numerous that joinder of all members of the class is impracticable.

b. Commonality: There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual members of the class. These common questions of law and fact include:

1. whether the indenture that defendant required plaintiffs and other Filipino nurses to sign as a condition of employment created illegal, unconstitutional, and unenforceable contracts of indentured servitude;

2. whether the so-called "liquidated damages" clause in defendant's standard employment contract is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994;

3. whether the so-called "liquidated damages" clause in defendant's standard employment contract is an unenforceable penalty under New York law;

4. whether the non-compete penalty and garnishment provision in defendant's standard contract is an unenforceable non-compete clause;

5. whether the so-called "liquidated damages" clause, the indenture, and the non-compete penalty, separately or together, constitute a threat of "serious harm" within the meaning of the Trafficking Victims Protection Act;

6. whether defendant engaged in a policy and practice of discriminating against Filipino nurses in the terms and conditions of their employment;

7. whether defendant engaged in a policy and practice of using an illegal and unconstitutional contract of indentured servitude, an unenforceable contract termination penalty, and an overbroad and unenforceable non-compete penalty to coerce Filipino nurses to continue working for them;

8. whether defendant is liable to the class;

        9. whether the class can be made whole by the payment of compensatory damages; and

        10. whether class members are entitled to punitive damages.

    c. Typicality: Plaintiffs' claims are typical of the claims of the class. Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by the defendant's policies and practices described above.

    d. Adequacy of Representation: Plaintiffs will fairly and adequately represent the interest of class members. Plaintiffs' counsel is competent and experienced in litigating complex employment class actions, including class actions alleging violations of the TVPA.

50. Superiority: A class action is superior to other available means for fair and efficient adjudication of this controversy. Each class member has been damaged and is entitled to recovery because of defendant's illegal policies and practices. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

### FIRST CLAIM FOR RELIEF
### FOR VIOLATIONS OF THE
### TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
### 18 U.S.C. § 1595

51. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

52. The Trafficking Victims Protection Act ("TVPA") imposes liability on anyone who knowingly provides or obtains the labor or services of a person by means of threats of

serious harm, the abuse or threatened abuse of law or legal process, or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm.

53. The TVPA defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

54. Contract termination fees between $15,000 and $25,000 have been found to constitute a threat of serious harm as defined in the TVPA.

55. Defendant knowingly provided and obtained the labor and services of plaintiffs by means of serious harm and threats of serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

56. Defendant knowingly provided and obtained the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

57. The TVPA defines an "abuse or threatened abuse of law or legal process" as the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any

11

manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

58.     Defendant knowingly provided and obtained the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendant and to refrain from seeking employment elsewhere.

59.     Defendant knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

60.     Defendant knowingly recruited, transported, provided, and obtained plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

61.     By reason of the conduct described above, defendant was a perpetrator of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

62.     Plaintiffs suffered damages as a direct and proximate result of defendant's conduct.

63.     Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

**SECOND CLAIM FOR RELIEF
FOR ATTEMPTING TO VIOLATE
THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
18 U.S.C. § 1594(a)**

64.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

65.     Defendant attempted to violate 18 U.S.C. §§ 1589 and 1590.

66. Plaintiffs suffered damages as a direct and proximate result of defendant's attempts to violate 18 U.S.C. §§ 1589 and 1590.

67. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF
### FOR VIOLATIONS OF 42 U.S.C. § 1981

68. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

69. Plaintiffs are members of a racial minority.

70. Defendant discriminated against plaintiffs with respect to the terms and conditions of their employment contracts.

71. Defendant intentionally discriminated against plaintiffs based on their race.

72. Plaintiffs suffered damages as a direct and proximate result of defendant's discriminatory conduct.

73. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### FOURTH CLAIM FOR RELIEF
### FOR VIOLATIONS OF
### THE NEW YORK CITY HUMAN RIGHTS LAW

74. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

75. Defendant's conduct constitutes unlawful discrimination in violation of the New York City Human Rights Law.

76. Plaintiffs suffered damages as a direct and proximate result of defendant's discriminatory conduct.

77. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### FIFTH CLAIM FOR RELIEF
### FOR VIOLATIONS OF
### THE NEW YORK STATE HUMAN RIGHTS LAW

78. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

79. Defendant's conduct constitutes unlawful discrimination in violation of the New York State Human Rights Law.

80. Plaintiffs suffered damages as a direct and proximate result of defendant's discriminatory conduct.

81. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### SIXTH CLAIM FOR RELIEF
### FOR A DECLARATORY JUDGMENT

82. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

83. The indenture, the so-called "liquidated damages" clause, and the non-compete penalty are unenforceable under the TVPA.

84. The indenture, the so-called "liquidated damages" clause, and the non-compete penalty are unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

85. The indenture, the so-called "liquidated damages" clause, and the non-compete penalty are unenforceable under New York law.

86. Plaintiffs have a definite and concrete dispute with defendant concerning the enforceability of the indenture, the so-called "liquidated damages" clause, and the non-compete penalty.

87. The dispute touches the legal relations of parties having adverse legal interests.

88. The dispute is real and substantial.

89. The dispute admits of specific relief through a decree of a conclusive character.

90. The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## Jury Demand

91. Plaintiffs are entitled to and demand a jury trial.

## Prayer for Relief

**WHEREFORE** plaintiffs Alyda Patricia Genova, Melanie Gan, and Maria Kriszelda Icuspit request judgment against the defendant awarding them and all others similarly situated: compensatory and punitive damages for violations of the TVPA, Section 1981, and the New York City and State Human Rights Laws; pre- and post-judgment interest on all damages awarded; an injunction prohibiting the defendant, its agents and anyone acting in concert with it or on its behalf from threatening to enforce or enforcing the indenture or so-called "liquidated damages" clause; a declaration that the indenture and so-called "liquidated damages" clause are unenforceable under the TVPA, Section 1981, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a), 42 U.S.C. § 1988, N.Y. Exec. L. § 297, and N.Y.C. Admin. Code § 8-502(g); and

granting such other relief as the Court deems just and proper.

Dated: New York, New York  
       July 29, 2024

THE HOWLEY LAW FIRM P.C.

By: */s John J.P. Howley*  
    John J.P. Howley  
*Attorneys for Plaintiffs*  
1345 Avenue of the Americas, 2nd Floor  
New York, New York  10105  
(212) 601-2728